

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\*\*\*

UNITED STATES OF AMERICA,

          Plaintiff,

vs.

JACQUELINE LOUISA GENTLE,

          Defendant.

2:12–cr–00463–JCM–VCF–3

**<u>ORDER AND</u>**
**<u>REPORT & RECOMMENDATION</u>**

      Before the court is defendant Gentle's Motion to Suppress Search Warrant. (#94). The government filed an Opposition (#96), and defendant filed a Reply (#105).

      Also before the court is defendant Jacqueline Louisa Gentle's Motion for Severance of Counts and Defendants. (#95). The government filed an Opposition (#100), and defendant filed a Reply (#106).

      The court held a hearing on September 3, 2013. (#116).

      Defendant Gentle is awaiting trial on charges of false statement in application for passport, 18 U.S.C. § 1542, false citizenship claim, 18 U.S.C. § 1028A(a)(1), and conspiracy to commit mail fraud, 18 U.S.C. § 1349. (#47). Defendant alleges that the superseding indictment against her (#47) arises from a cooperating witness ("CW") providing information to the authorities that co-defendant Williams obtained his passport through fraud and that he had been involved in unemployment compensation fraud. (#94). Special Agent Roland II obtained a search warrant to search the premises of 2637 Soledad Way and two cars for evidence of the crimes. *Id.* Defendant Gentle asserts that the search warrant application/affidavit did not meet the particularity requirement or the breadth requirement, and asks this

1

court to suppress the evidence obtained as a result of the search warrant. *Id.* Defendant also asks this court to sever the counts against her and to sever the trials of she and co-defendant Frederick Williams. (#95).

## BACKGROUND

On December 11, 2012, Agent Roland of the United States Diplomatic Security Service applied for a search warrant of the premises known as 2637 Soledad Way, N. Las Vegas, Nevada 89030, and two automobiles. (#92-1). The Honorable Judge George Foley, Jr. approved the search warrant on the same day. *Id.* The application/affidavit for search warranted stated that a CW provided information to Agent Roland relating to defendant Gentle and her co-defendants, and that "[t]he substantive information the CW provided to me has been independently corroborated by various investigative methods and the CW has proved to be reliable." *Id.*

The search warrant application/affidavit identifies defendant Gentle as "Subject 2," and states that defendant Gentle is alleged to have fraudulently obtained a U.S. passport by identifying a man who is a U.S. citizen with the same name as her father's last name, and presenting an application listing the man as her father, when in fact he is not. *Id.* The application/affidavit states that her co-defendant, Frederick Williams, assisted her in this fraud, and that he used a computer and/or fax machine to submit fraudulent payroll reports in furtherance of another alleged crime. *Id.* The application/affidavit also states that co-defendant Williams is potentially involved with an unemployment compensation fraud, and provides the background of the investigation into such allegations. *Id.*

The application/affidavit states that the CW informed the agent that defendant Williams rented a single family house located at 3132 Congress Ave, and that defendant Gentle reside at that residence. *Id.* The application/affidavit also states on September 18, 2012, agents conducted surveillance of the residence and "observed several vehicles parked at the residence including a white 1999 Pontiac Door

2

sedan bearing Nevada license plates 897-WTN and a black 1995 Toyota Door sedan bearing Nevada license plate 454-XKW," one being registered to defendant Williams' brother and the other registered to defendant Williams. *Id.* The application/affidavit also states that "[a]gents conducted Choice Point Consolidated Lead Evaluation and Reporting CP Clear query for 3123 Congress Aye Las Vegas NV," and that "[t]he query returned list of reported residents including [defendant Williams]." *Id.* According to the application/affidavit, "Transibsion New Movers Detail and household Listing listed [defendant Williams] as resident of the property." *Id.* Defendant's car was seen outside the property on November 13, 2012. *Id.*

The application/affidavit states that on "December 6, 2012, [t]he CW informed me that [defendant Williams] abandoned 3123 Congress Ave N. Las Vegas, Nevada and moved to 2637 Soledad Way Las Vegas NV 89030 (PREMISES)," and that "[o]n December 6, 2012 at 500 p.m. I observed three vehicles parked at the PREMISES; a green Chevy Suburban with Nevada license plate 683-YBL; a white mini-van with no license plate, and a black BMW sedan with no license plate." *Id.* A records check revealed that the license plate 683-YBL is registered to defendant Williams. *Id.* The application/affidavit further states that "[o]n December 7, 2012, at 3:40 a.m., I observed the above three vehicles at the PREMISES and the black Toyota Camry with license plate 454-XKB registered to [defendant Williams]," and that "[o]n December 7, 2012, at 3:30 p.m. I again observed the green Chevy Suburban registered to [defendant Williams] in the yard." *Id.*

The application/affidavit provides that "[i]n your Affiants training and experience in criminal investigations related to fraudulent identification documents your affiant knows that individuals that obtain produce, sell, transfer, and manufacture identity and travel documents including documents used to procure passports, visas, alien registration, and other documents prescribed by statute for entry into the U.S often use such documents to conceal further fraudulent activity and tend to retain and secure

3

such items at their residences businesses or vehicles to keep them close at hand." *Id.* The application/affidavit states that "[b]ecause the aforementioned items and instrumentalities are not in and of themselves incriminating, persons involved in this type of activity often retain the items in their residences, businesses, and vehicles for future reference and use in the event they have need to again secure produce manufacture or transfer fraudulent documents." *Id.*

The application/affidavit also provides Attachments A-1, A-2, and A-3, which are descriptions of the premises to be searched, and Attachment B, which is a description of the property to be seized from the premises. *Id.* The top of Attachment B states that property to be seized includes "[e]vidence of the fruits and instrumentalities of violations of 18 U.S.C §371- Conspiracy to Defraud the United States; 18 U.S.C § 911-False Claim to U.S Citizenship; 18 U.S.C §1028A - Aggravated Identity Theft; 18 U.S.C § 1341- Mail Fraud; 18 U.S.C § 1343-Wire Fraud; 18 U.S.C § 1542- Passport Fraud; and 18 U.S.C § 1546- Visa Fraud, those violations involving Frederick Williams, Jacqucline Gentle, Prudence Uter Swift, Deon Gentle, and Denise Leslie Williams..." *Id.* The Attachment then provides a list of such items, including letters, passports, government stamps and seals, telephone records, mail, Social Security Administration documents, travel records, etc. *Id.*

On December 12, 2012, Agent Roland, along with other agents, executed the search warrant of 2637 Soledad Way, N. Las Vegas, Nevada 89030, and arrested co-defendants Williams and Deon Gentle. (#92). Subsequently, officers arrested defendant Jacqueline Gentle. Id. Defendant Williams was interviewed and made the following statements:

• That he helped Jacqueline and Deon gentle apply for US passports; that Williams informed them that the person he was claiming to be their father was not their true biological father but that they chose to go through with the application anyway.

4

- That he traveled with Jacqueline and Deon Gentle to California to assist them with their passport applications.

- That Williams created a fraudulent "acknowledgment of parentage and citizenship" allegedly signed by Anthony Todd Gentle.

- That he filed fraudulent unemployment claims in each person's name without their knowledge. (#89). Defendant Jacqueline Gentle was interviewed as well, and made the following statements:

- Williams prepared her passport applications and she was not aware of who he listed as her father.

- That someone other than her had been receiving unemployment benefits up until 2011.

*Id.*

Defendant Gentle filed a motion to suppress search warrant and a motion for severance of counts and defendants on June 26, 2013. (#94 and #95). The government filed oppositions (#96 and #100), and defendant filed a replies (#105 and #106).

## DISCUSSION

### Motion To Suppress (#94)

In the present motion to suppress, defendant Gentle asks this court to suppress the evidence found as a result of the search warrant (#92-1), and alleges that the application/affidavit for the search warrant was insufficient and did not meet the particularity requirement or the breadth requirement. (#94).

### A.    Standing

Relying on the court's ruling in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the court in *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978) held that the "capacity to claim the protection of the Fourth Amendment depends ... upon whether the

person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." A subjective expectation of privacy is legitimate if it is "one that society is prepared to recognize as reasonable..." *Rakas*, 439 U.S. at 143 (quoting *Katz*, 389 U.S. at 361).

The government argues that defendant has not established that she has standing to seek suppression of the evidence seized as a result of the search warrant (#92-1) because she did not have a legitimate expectation of privacy in the areas searched. (#96). Defendant asserts that she has standing to assert the Fourth Amendment violation, and relies on the court's rulings in *Derby v. Cupp*, 302 F. Supp. 686 (D. Or. 1969), *United States v. Gates*, 745 F. Supp. 2d 936 (N.D. Cal. 2010), and *United States v. Thomas*, 447 F.3d 1191 (9th Cir. 2006). (#105). Defendant asks this court to look at the totality of the circumstances test as enumerated by the court in *Reyes-Bosque*, 596 F.3d 1017 (9th Cir. 2010), and find that the "evidence proves common use of the property located at 2637 Soledad Way, North Las Vegas, NV 89030." During the hearing, defendant argued that she has standing because some of her personal items were at the residence searched. (#116). Defendant did not specify what personal items were at the residence or provide evidence of such allegation. *Id.*

Defendant's reply in support of her motion asserts that she has resided at several homes with her co-defendant/brother, defendant Williams, including 2104 Venus Avenue and 3004 Harewood Avenue, and states that "she has a history of sharing the same residence as her co-defendant." (#105). Defendant Gentle argues that "[a]t minimum she maintains a constant presence at co-defendant's residence due to their close familial ties which constitutes mutual use of the property and therefore common authority," and that "[c]ommon [a]uthority gives rise to standing to challenge the validity of the search warrant." *Id.* Defendant does not assert that she was present at the residence that was searched or that she lived with her co-defendant/brother Williams at the time of the search.

6

While defendant Gentle is correct in citing *Gates*, 745 F.Supp. 2d 947-48, for the proposition that a defendant is not required to be a resident of a home searched to have a legitimate expectation of privacy in the home, the defendant in Gates was an overnight guest at the residence at the time of the search. *Gates*, 745 F. Supp. 2d at 939. Defendant Gentle was not a resident and was not an overnight guest at the time of the search. See (#94). The case of *Derby v. Cupp*, relied upon by defendant also does not support of finding of standing in the circumstances before the court. The court in that case pointed out that "[a] defendant need not have a property right in the place invaded in order to object, K*atz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)," but went on to state that "the place must be one in which the defendant has 'a reasonable expectation of freedom from governmental intrusion.' *Mancusi v. DeForte*, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968)." *Derby v. Cupp*, 302 F. Supp. 686, 687 (D. Or. 1969). The court then stated that "[o]n this principle, Courts have granted standing to the occupant of an apartment belonging to another, *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), and to the occupant of a shared office in which the defendant had no ownership interest, *Mancusi v. DeForte*, supra." *Id.* (emphasis added). The court concluded by finding that since the defendant was "neither in the car nor had any right to return to it" at the time of the search, he did not have standing to object. *Id.*(citing *Parman v. United States*, 130 U.S. App. D.C. 188, 399 F.2d 559 (1968) (defendant who abandons premises prior to search has no standing to object)." As stated above, defendant did not occupy the residence at the time of the search and presents no evidence that she had recently left the residence and planned on returning. *See* (#94).

Defendant alleges that she had "common authority" over the premises searched, and cites to *United States v. Thomas*, 447 F.3d 1191 (9th Cir. 2006). *Id.* The court in Thomas stated that "[c]ommon authority rests "on mutual use of the property by persons generally having joint access or control for most purposes." *Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S. Ct. 2793, 111 L.Ed.2d 148 (1990)

(quotation omitted)." *Thomas*, 447 F.3d at 1198. The court stated, as an example, that in "*Jones v. United States*, 362 U.S. 257, 259, 265, 80 S. Ct. 725, 4 L.Ed.2d 697 (1960), the defendant had standing to challenge a search of a friend's apartment when he had permission to use the apartment, had a key to the apartment, stored his belongings there, and had the right and ability to exclude others, except the owner, from the apartment." *Id.*

Here, defendant Gentle does not provide evidence that she was an occupant of the premises when it was searched, that she had keys to the house, that she could exclude others, that she had belongings there, or that she could come and go and she pleased. (#94 and #105). Rather, defendant Gentle asserts that she and defendant Williams lived together at other residences and that this establishes common authority. (#105). Defendant Gentle, therefore, has not established that she had a legitimate expectation of privacy in the premises searched and does not have standing to allege a Fourth Amendment violation. *See Derby v. Cupp*, 302 F. Supp. at 687; *United States v. Thomas*, 447 F.3d 1198; *Jones v. United States*, 362 U.S. at 259. Defendant's motion to suppress (#94) should be denied for lack of standing.[1]

## Motion to Sever (#89)

### A.    Sever Claims

#### 1.    Arguments

Defendant argues that her "offenses should be severed because the counts were joined improperly in the indictment," as (1) "[t]he count of false citizenship claim and the count of false passport application are immigration charges," and (2) [t]he count of mail fraud is related to unemployment fraud." (#95). Defendant argues that the "counts are not similar in character and should

---

[1]  The court notes that even if defendant Gentle had standing to allege a Fourth Amendment violation, her arguments that the search warrant (#92-1) was insufficient are not supported by the record. Reading the introduction line in Attachment B and the accompanying affidavit in connection with the list provided in Attachment B (#92-1), the court finds that the application/affidavit met the particularity requirement and the breadth requirement.

be severed." *Id.* Defendant also argues that the "counts took place years apart," and that "[t]he charges do not constitute acts connected together as a common scheme." *Id.*

The government argues in opposition that "[t]he superseding indictment filed on April 16, 2013 illustrated three separate events that gave rise to the charges against Jacqueline Gentle:

• December 2008: Gentle falsely claims to be a U.S. citizen on an application to the Nevada Department of Motor Vehicles for a driver's license instruction permit.

• February 2010: Gentle falsely claims A. Gentle, a U.S. citizen, is her father in an application for a United States passport.

• August 2010 – June 2012: Gentle is used as one of the "employees" of the fake companies created by Williams in his unemployment compensation fraud scheme, and is represented as a U.S. citizen on the fraudulent employee records.

(#100). The government argues that "[t]hese three events and the resulting charges are sufficiently connected such that joinder was proper under Rule 8(a)." *Id.*

The government further argues that the common thread in the indictment against defendant Gentle is her false claims of citizenship, as "[t]he Defendant made false claims of citizenship when applying for a passport, when applying for DMV permit, and when applying for unemployment compensation in her own name." *Id.* The government contends that the indictment also demonstrates a "common scheme or plan" and that the defendant and her co-defendants are "accused of a wide-ranging fraud operation encompassing several government agencies from which they attempted to receive benefits using misrepresentations." *Id.*

### 2.    Relevant Law/Discussion

Federal Rule of Criminal Procedure 8(a) provides that "[t]he indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged--whether felonies

or misdemeanors or both--are [1] of the same or similar character, or [2] are based on the same act or transaction, or [3] are connected with or constitute parts of a common scheme or plan." In determining the existence of a common scheme, courts look at whether the "[c]ommission of one of the offenses either depended upon or necessarily led to the commission of the other; proof of the one act either constituted or depended upon proof of the other." *United States v. Jawara*, 474 F.3d 565, 574 (9th Cir. 2007) (quoting *United States v. Halper*, 590 F.2d 422, 429 (2d Cir.1978); *see also United States v. Anderson*, 642 F.2d 281, 284 (9th Cir.1981) ("When the joined counts are logically related, and there is a large area of overlapping proof, joinder is appropriate.") (citing *United States v. Roselli*, 432 F.2d 879, 899 (9th Cir.1970)). "[T]he established rule in this circuit is that a valid basis for joinder should be discernible from the face of the indictment...," and since "Rule 14 is available "as a remedy for prejudice that may develop during the trial," Rule 8 has been "broadly construed in favor of initial joinder...." *United States v. Friedman*, 445 F.2d 1076, 1082 (9th Cir.1971)." *Id* at 573.

The court finds the severing the counts against defendant Gentle is not warranted. The superseding indictment alleges that defendant Gentle (Count 5) submitted a false application for a passport by representing that an individual who was a U.S. citizen was her father when she knew this to be false, (Count 7) represented herself to be a U.S. citizen in a Nevada Department of Motor Vehicle driver's license instruction permit application, and (count 9) conspired with others to commit mail fraud by way of submitting fraudulent Nevada Business Registrations for companies, fraudulent wage records for non-existent employees, and fraudulent claims for UI benefits, and receiving and using UI benefit debit cards. (#47).

Count 10 alleges that, in furtherance of the mail fraud/unemployment fraud crime, defendants caused a UI benefits debit card to be issued in defendant Jacqueline Gentle's name. *Id.* Count 9 states that in order to receive UI benefits, a claimant would have to provide certain personal information,

including name, mailing address, phone number, social security number, U.S. Citizenship status, Alien registration number (if applicable), education level, etc. *Id.* Count 9 also states that [u]nder federal and Nevada law, claimants who were not United States citizens were eligible to receive UI benefits only if they were "1) lawfully admitted for permanent residence in the United States; 2) lawfully present in the United States for the purposes of performing work; and 3) otherwise permanently residing in the United States under the color of law." *Id.*

It is clear from the face of the indictment (#47) that in order to execute the alleged wrongdoings resulting in the "unemployment fraud" related count (count 9) against defendant Gentle, defendant Gentle had to commit the other fraudulent acts of (1) submitting a false application for a passport, and (2) representing herself to be a U.S. citizen in a Nevada Department of Motor Vehicle driver's license instruction permit application. The court finds that the "[c]ommission of one of the offenses [ ]either depended upon [ ] or necessarily led to the commission of the other;" and that joinder is appropriate. *Jawara*, 474 F.3d at 574. Each of the allegations against defendant Gentle "constitute parts of a common scheme or plan" with the other defendants to fraudulently become U.S. citizens, fraudulently register companies, fraudulently allege that Gentle and others were employees of the companies, and obtain money by way of unemployment fraud. *See* Fed. R. Civ. P. 8(a). The motion to sever claims (#95) is denied.

**B.    Sever Defendants**

**1.    Arguments**

Defendant Gentle argues that when "defendants are tried together in a complex case and they have markedly different degrees of culpability, the risk of prejudice that a joint trial would…prevent the jury from making a reliable judgment about guilt or innocence is heightened." *Zafiro v. U.S.*, 113 S. Ct. 933 (1993)." (#95). Defendant contends that "[t]he case against Frederick Williams, Jacqueline Gentle,

11

and Deon Devon Gentle is extremely complex," and that "[t]he case contains numerous counts, an extensive amount of evidence, and varying degrees of culpability." *Id.* "Defendant Jacqueline Gentle, claims that her half-brother, Frederick Williams, completed the paperwork and she was unaware of the false misrepresentations. She also claims that she was not receiving the unemployment funds that were fraudulently procured. Instead, she claims that Frederick Williams was responsible." *Id.* Defendant argues that "[a] failure to sever the defendants could reasonably cause the jury to apply some guilt to Jacqueline due to Frederick Williams' involvement even though she was less culpable or not culpable in any manner." *Id.* Defendant argues that "Rule 14 of the Federal Rules of Criminal Procedure also allows for the severance of defendants if the defendants possess antagonistic or inconsistent defenses," and that "Gentle and Williams offer completely different accounts of who filled out the applications, who collected the unemployment benefits, and, ultimately, who is criminally responsible in the case at bar." *Id.* Defendant contends that "[g]iven these facts, the jury would necessarily have to disbelieve one of the defendants in order to believe the other defendant because their accounts are directly contradictory." *Id.*

The government asserts that "[t]he Defendant['s] first claim[] that a joint trial would be prejudicial due to the complexity of the case, including the amount of evidence and varying degrees of culpability between her and Frederick Williams" lacks merit, as "the Ninth Circuit has held that "the fact that there may be more incriminating evidence against one defendant than there is against another, is insufficient to justify a separate trial for the latter." *United States v. Marcello*, 731 F.2d 1354, 1360 (9th Cir. 1984)." (#100). The government argues that "[t]here is an even stronger preference for joint trials in conspiracy cases, "because the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the same evidence would be admissible against each of them in separate trials." *United States v. Fernandez*, 388 F.3d 1199, 1242 (9th Cir. 2004)." *Id.*

Government states that "[d]efendant Gentle is charged with participation in various schemes primarily concocted by Frederick Williams, including a conspiracy charge for the mail fraud offenses resulting from the unemployment compensation fraud," and that "[w]hile there are numerous counts and a good deal of evidence in the case, severance of defendants would not cure this problem; much of the evidence to be used against Williams will also be used against Gentle, whether it is introduced at a joint trial or at separate trials. The strong preference to jointly try co-conspirators weighs against severance on this basis." *Id.*

The government also asserts that defendant has failed to demonstrate mutually antagonistic defenses, as "at this point in time, it is unclear what defenses the co-defendants are going to use at trial." *Id.*

## 2.      Relevant Law/Discussion

Rule 8(b) of the Federal Rules of Criminal Procedure provides that "[t]he indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." In the federal system there is a preference for joint trials of defendants who are indicted together. *Richardson v. Marsh*, 481 U.S. 200, 209 (1987). Even when proper under Rule 8(b), however, joinder may be prejudicial. Rule 14(a) provides that if the joinder of defendants "appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). "[W]hen defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

If a defendant establishes a "high" risk of prejudice, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id* at 539.

Defendant Gentle argues that severing the defendants for trial is warranted because of the complexity of the case, possible jury confusion regarding the culpability of the defendants, and the fact that the defendants will offer mutually antagonistic defenses. (#95).

### a.    Complexity and Jury Confusion

The Ninth Circuit has specifically address the issue before this court. In *United States v. Marcello*, 731 F.2d 1354, 1360 (9th Cir. 1984), the court held that "[j]oint participation in a criminalactivity generally means a joint indictment and a joint trial."[2] The court stated that "[t]he fact that there may be more incriminating evidence against one defendant than there is against another, is *insufficient* to justify a separate trial for the latter." *Marcello*, 731 F.2d at 1360 (emphasis added) (citations omitted). The Ninth Circuit has also articulated a "general rule that joint trials of persons charged with committing the same offense expedites the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burdens upon citizens to sacrifice time and money to serve on juries and avoids the necessity of recalling witnesses who would otherwise be called upon to testify only once. *United States v. Gaines*, 563 F.2d 1352, 1355 (CA9 1977); *United States v. Patterson*, 455 F.2d 264 (CA9 1972)." *United States v. Brady*, 579 F.2d 1121, 1128 (9th Cir. 1978). The court in *Brady* followed this general rule, and held that "the fact that the evidence against one codefendant is more damaging than the evidence against another one is not a ground for severance. *United States v. Gaines, supra*, at 1355," as "[u]ltimately, the question is whether the jury can

---

[2]   Citing *United States v. Escalante*, 637 F.2d 1197 (9th Cir.), cert. denied, 449 U.S. 856, 101 S.Ct. 154, 66 L.Ed.2d 71 (1980); *United States v. Gay*, 567 F.2d 916 (9th Cir.), cert. denied, 435 U.S. 999, 98 S.Ct. 1655, 56 L.Ed.2d 90 (1978); *United States v. Silla*, 555 F.2d 703 (9th Cir.1977).

reasonably be expected to compartmentalize the evidence as it relates to separate defendants in the light of its volume and limited admissibility." *Id.*

Here, defendant Gentle and defendant Williams are charged with committing several fraudulent acts, including conspiring together to commit mail fraud. (#47). While the indictment (#47) charges defendant Williams with more counts than defendant Gentle, and defendant Williams is alleged to have concocted the fraudulent schemes, as the two participated together in the fraud, much of the evidence, testimony, exhibits, and arguments will be the same. *Id.* Joint trials would preserve judicial time and resources, and allow the government to present a fluid case to the jury. *See Brady*, 579 F.2d at 1128. Despite the fact that the evidence will necessarily be more heavily stacked against defendant Williams, as he is charged with more counts, this alone does not require severance of the defendants' trials. *Id.* The District Judge presiding over the trial can fashion sufficient instructions to ensure that the jury "compartmentalizes" the allegations and facts against defendant Williams as opposed to the allegations and facts against defendant Gentle, and that the jury understands that the culpability of one of the defendants does not determine the culpability of the other. *See Id.*

### b.    Antagonistic Defenses

The Supreme Court has held that "mutually antagonistic defenses are not prejudicial *per se.*" *Zafiro*, 506 U.S. at 538. Mere antagonism between co-defendants is not enough; "a defendant must show that the core of the co-defendant's defense is so irreconcilable with the core of his own defense that the acceptance of the co-defendant's theory by the jury precludes acquittal of the defendant." *United States v. Throckmorton*, 87 F.3d 1069, 1072 (9th Cir. 1996). The finding of antagonistic defenses provides the court with grounds to sever the trial of co-defendants. *United States v. Tootick*, 952 F.2d 1078, 1082 (9th Cir. 1991). "[M]ere inconsistency[, however,] in defense positions is insufficient to find codefendants' defenses are antagonistic" or mutually exclusive. *Id.* It is when the "acquittal of one codefendant would

15

necessarily call for the conviction of the other," that the court will sever the trials on this basis. *Id.* (citing *United States v. Adler*, 879 F.2d 491, 497 (9th Cir. 1988)).

The court finds that defendant Gentle has not demonstrated to the court that the defendants' defenses are antagonistic, that the acquittal of either of the defendants would "necessarily call for the conviction of the other," or that Williams' defense is so irreconcilable with the core of her own defense that "acceptance of the co-defendant's theory by the jury precludes acquittal of the defendant." *United States v. Throckmorton*, 87 F.3d 1069, 1072 (9th Cir. 1996); *See Tootick*, 952 F.2d at 1082. Defendant Gentle has not demonstrated that if defendant Williams is acquitted of the crimes against him, defendant Gentle will "necessarily" be convicted of the crimes alleged against her. *See Tootick*, 952 F.2d at 1082. As it is unclear at this time what the defendants' actual defenses will be at trial, the denial of the motion (#95) is *without prejudice* for the defendant to raise the issue with the trial judge in a motion *in limine*.

Accordingly, and for good cause shown,

IT IS ORDERED that defendant Jacqueline Louisa Gentle's Motion for Severance of Counts and Defendants (#95) is DENIED *without prejudice*.

## RECOMMENDATION

Based on the foregoing, it is the recommendation of the undersigned United States Magistrate Judge that defendant Gentle's Motion to Suppress Search Warrant (#94) should be DENIED for lack of standing.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that

16

(1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 15th day of October, 2013

CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE